UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

TELL BEHARRY,

                Plaintiff,

- against –

THE CITY OF NEW YORK,

                Defendant.

**Case No.: 1:18-cv-02042**

**SECOND AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

---------------------------------------------------------------------x

Mr. Tell Beharry, by his attorneys, White, Nisar & Hilferty, LLP, alleges upon knowledge to himself and upon information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff Mr. Tell Beharry ("Mr. Beharry"), an African-American sergeant for the 46th Precinct, files this complaint alleging that Defendant The City of New York ("Defendant" or "the NYPD") illegally and improperly denied Mr. Beharry overtime opportunities, retaliated against him by denying him supervisory positions with flexible schedules, and generated pretextual reprimands against him upon his race and retaliation. Mr. Beharry diligently performed his job duties for Defendant over the course of seventeen years, only to receive disparate treatment in his employment opportunities. Mr. Beharry now requests this Court enforce his civil rights as protected by federal, state, and local law.

2.    Plaintiff brings this action pursuant Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §1981 *et seq.*, 42 U.S.C. § 2000 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights Law, N.Y. Admin Code 8-101, *et seq.* against the NYPD.

## JURISDICTION & VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's Civil Rights under Title VII and the other aforementioned federal statutes. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PROCEDURAL REQUIREMENTS

5. Mr. Beharry complied with all statutory prerequisites to filing this action.

6. On June 6, 2017, Mr. Beharry filed a Verified Complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") charging Defendants with unlawful discriminatory employment practices.

7. On December 7, 2017, the EEOC issued Mr. Beharry a notice of right to file suit in federal court for allegations of unlawful discrimination on the basis of racial discrimination as set forth in the Complaint.

8. Mr. Beharry filed this action within 90 days of receipt of the EEOC's decision.

9. Mr. Beharry met any and all other prerequisites to the filing of this suit.

## THE PARTIES

10. Plaintiff Sgt. Tell Beharry is an African-American male, originally from Guyana, residing in Suffolk County, New York. The NYPD employed Sgt. Beharry from 2001 to present.

11.     Defendant The City of New York is a municipality controlling The City of New York Police Department, an agency primarily responsible for law enforcement and investigation within the five boroughs of New York City, New York.

## FACTUAL ALLEGATIONS

12.     Defendant hired Sgt. Beharry on July 2, 2001 as a Police Officer. In 2010, Defendant promoted him to Sergeant at the 46th Precinct, located at 2120 Ryer Ave., Bronx, New York 10457-2919.

13.     As set forth in greater detail below, Sgt. Beharry experienced a plethora of discrimination and harassment based on his race and retaliation during his employment with Defendant.

14.     As described below, Defendant provides beneficial treatment to Hispanic officers. Defendant pursued Sgt. Beharry for disciplinary actions due to his race as an African-American. Other Hispanic officers exhibit similar or worse professional behavior for which they are not subjected to disciplinary action. Defendant denied Sgt. Beharry from preferential supervisory roles which were provided to Hispanic officers with less seniority than Sgt. Beharry.

15.     Throughout the end of 2014, Sergeant John Pirando associate with Thomas Georgevitch, a felon arrested for holding himself out as a police officer. Pirando would arrange rides with Georgevith, assuming that he was an officer with another law enforcement agency. Pirando, an Hispanic officer, never received any discipline for these actions. In addition, the precinct minimized its, as well as Pirando's, involvement with Georgevitch

16.     Throughout 2015, Defendant used a written minor log system to record officer infractions. Typically, the minor log should be at the main desk, but the Integrity Control Officer (ICO) in this precinct would keep it locked up. Infractions written in this log by African American

sergeants against Hispanic officers would be crossed out. Similarly, the command discipline log was monitored by the ICO to dissuade potential warnings to be lodged against Hispanic officers.

17. On January 5, 2015, Mr. Beharry's Commanding Officer assigned him to supervise patrol units. Mr. Beharry assisted Officers Samuel and Echavaria with a report for grand larceny. In the following half-hour, Mr. Beharry responded to a commercial robbery. He broadcasted a description of the two perpetrators, who proceeded to shoot two police officers.

18. In mid-May 2015, Defendant issued a command discipline against Mr. Beharry for failing to ensure the January 5, 2015 grand larceny report was entered into Defendant's complaint report system. Sergeant Gonzalez Angel was the anti-crime supervisor at the time of the commercial robbery. Angel, an Hispanic officer, did not receive a command discipline for failure to supervise his officers who should not have been in the field without wearing ballistic vests.

19. In November 2015, two African-American officers, Officer Fabian Nemhard and Officer Merant, made a complaint about racist comments in the workplace by Officer Marrone, a Caucasian male officer. Nemhard and Merant reported this incident to Sgt. Beharry. As per Defendant's policy, Mr. Beharry issued a formal complaint to Defendant's Office of Equal Employment Opportunity on November 18, 2015. After reporting this incident, Sgt. Beharry's career with Defendant has been affected significantly. In retaliation for Mr. Beharry filing this official complaint, Defendant refused to provide Mr. Beharry with overtime opportunities and preferential supervisory roles.

20. On January 3, 2016, Sgt. Beharry responded to a shooting, recognized the victim, and began to notify the officers on the scene the victim was known to carry a firearm. Lieutenant Ravelo, an Hispanic officer, approached and told Sgt. Beharry to resume his patrol. Sgt. Beharry acknowledged the order but ensured he warned the officers on the scene. Ravelo pulled Sgt.

Beharry aside and grew angry that Sgt. Beharry did not resume his patrol, yelling at Sgt. Beharry and flailing his arms. Ravelo frequently pursued Sgt. Beharry's performance and reported minor incidents in the precinct to other supervisory officers to target Sgt. Beharry based upon his race.

21. On March 23, 2016, Defendant's Operation IMPACT, a program designed to deploy most members of Defendant's Academy in high crime precincts around New York City, ended. As a part of Operation IMPACT, Sgt. Beharry supervised over ten police officers per shift as well as meeting his patrol requirements from March 2010 to March 2016. This experience indicates that Sgt. Beharry is more than qualified to occupy a supervisory role. Defendant instead assigned him to a midnight shift.

22. When Operation IMPACT concluded, Sgt. Beharry requested assignment to a preferential supervisory role. Preferred supervisory roles include advantages such as overtime opportunities and weekends off-duty. Defendant has two practices to grant these positions to officers. Officers can present an application to the Supervisory Assignment Board or receive an appointment from their precinct's Special Projects Lieutenant. Defendant denied this request. Instead, Defendant reassigned Sgt. Beharry to a patrol position, resulting in a burdensome schedule for him. Defendant provided preferential supervisory positions to seven Hispanic officers with significantly less experience than Sgt. Beharry. Defendant provided Sgt. Edward Arias, Sgt. Francisco Fernandez, Sgt. Alex Fernandez, Sgt. Albert Puente, Sgt. Vladimir Garcia, Sgt. Kelvin Garcia, and Sgt. Elvin Pichardo with preferential supervisory roles. Sgt. Beharry was equally as qualified, if not more qualified, than these officers.

23. In April 2016, Captain Carlos Ghonz, an Hispanic officer, issued a command discipline against Sgt. Beharry. Just after Sgt. Beharry was transferred to the midnight shift, he assigned certain officers to sectors for patrol. Ghonz was the precinct's executive officer at that

5

time and issued a command discipline against Sgt. Beharry for failing to assign officers to sectors specifically approved by the Lieutenant platoon commander and commanding officer. Sgt. Tirado intervened and pointed out that Sgt. Beharry was not aware of those assignments. Ghonz ignored this point and issued a command discipline against Sgt. Beharry.

24. In May 2016, Ghonz issued another command discipline against Sgt. Beharry. One night, officers assisted a male victim who had been slashed in the back of the neck. Both patrol officers and detectives verified that the felony assault occurred, and the officers sent Sgt. Beharry pictures of the injury. Sgt. Beharry was the only supervisory sergeant assigned to the precinct that night and did not believe it was feasible to leave the precinct vulnerable by personally verifying the assault. Ghonz issued Sgt. Beharry a command discipline for failure to respond to a seven major incident. Ghonz issued these disciplines against Sgt. Beharry due to his race. Another sergeant warned Sgt. Beharry to watch out because Ghonz was targeting Sgt. Beharry.

25. On July 20, 2016, Lieutenant Gabriel Healy, Sgt. David Doria, Sgt. Smith, Sgt. Tirdao, and Sgt. Beharry were on duty covering the midnight shift. Doria acted as desk sergeant until 4:00 AM, when Tirado relieved him. None of these three sergeants left the stationhouse to respond to calls until approximately 5am. Sgt. Beharry responded to reports of a stabbing around 1:00 A.M. On his way back to the station, Sgt. Beharry stopped for a few minutes at the site of a shooting. When he returned to the station issuing his report regarding the stabbing, Healy directed Sgt. Beharry to notify the sector where the shooting occurred to cover the interior and ensure no further action was required. Around 3:40 AM, Officer Corlette notified Sgt. Beharry of a second stabbing; this was the first Sgt. Beharry knew of an additional stabbing that night.

26. Defendant incorrectly alleged that Sgt. Beharry acknowledged the second stabbing while he was responding to the first stabbing. Defendant issued a command discipline to Sgt.

Beharry for failure to supervise because he did not respond to the second stabbing in a timely manner. If Officer Corlette attempted to notify Sgt. Beharry of the second stabbing while Sgt. Beharry was responding to the first stabbing, Corlette could easily have reached the desk sergeant on duty to handle the incident. Alternatively, Corlette should have contacted his direct supervisory sergeant, Tirado, who was also on duty that night.

27. When Sgt. Beharry did attend to the second stabbing, he established a crime scene outside; at the time, the police were informed the stabbing occurred outdoors. Later, it became clear that the stabbing had in fact occurred indoors. Defendant issued a second command discipline for failure to set up a crime scene.

28. Healy was responsible for supervising all radio transmissions and precinct activity. Healy requested that Sgt. Beharry handle multiple incidents simultaneously without seeking out any of the three other sergeants on duty. Healy, a Caucasian officer, was issued a command discipline, which essentially constituted a slap on the wrist as he was subsequently granted a transfer to a preferred position. Conversely, Sgt. Beharry's command discipline has impeded his career and opportunities with the NYPD.

29. These incidents are routinely handled with much less severity or not escalated to command disciplines in response to the actions of Hispanic officers. Conversely, precinct supervisors went to lengths to allege misconduct against Sgt. Beharry and pursue the most severe results possible.

30. On July 20, 2016, in response to the volume of incidents that night, Sergeant Beharry worked for seven hours of overtime. He submitted paperwork to Lieutenant Espinosa requesting overtime pay in cash compensation, as opposed to overtime taken in hours against his normal schedule. Espinosa rejected his overtime slip multiple times because she refused to grant

the overtime in cash compensation. Defendant issued a command discipline for failure to supervise against Mr. Beharry, despite two other supervisors of minority background being present in the precinct at the same time. After July 20, 2016, Sgt. Beharry's commanding officer would not provide him with any additional overtime assignments continuing through June 2017. Espinosa has targeted African American sergeants previously based upon their race.

31.     Just after these incidents, Sgt. Beharry spoke with Commanding Officer Phillip Rivera about submitting his Supervisory Assignment Board. This Board could grant Sgt. Beharry a supervisory role with weekends off and overtime eligibility. Applications to the Board require a commanding officer's endorsement to proceed to the interviewing stage. Rivera indicated to Sgt. Beharry he would sign the application. As a result, Sgt. Beharry submitted the application to Rivera for approval.

32.     A few weeks later, Sgt. Beharry inquired with Operations Coordinator Lieutenant John Lewis about his Board application. Lewis communicated that Rivera refused to sign the paperwork due to the open investigation regarding the July 20, 2016 incident.

33.     On October 25, 2016, Defendant questioned Sgt. Beharry regarding the July 20, 2016 stabbing incident during a Go 15 hearing. Precinct delegate Eddie Ching and Trustee Ed Geary were present to question Sgt. Beharry. Lieutenant Iris Espinosa was present as well and went so far as to ask questions regarding the event. The execution of this questioning was intended to highlight Sgt. Beharry's actions, despite four other officers being present and neglecting their responsibilities simultaneously. In addition, at the hearing Defendant accused Sgt. Beharry of accepting a knife at the crime scene. This accusation was entirely inaccurate and illustrates the intent by Defendant to attribute as much negative behavior to Sgt. Beharry as possible.

34.     In November 2016, Defendant again questioned Sgt. Beharry during a Go 15 hearing based upon an anonymous letter accusing Sgt. Beharry of accepting money from his subordinate officers. In response to this questioning, Sgt. Beharry explained that he collected money from officers to purchase food and refreshments for an office party to celebrate Captain Walton's transfer to another precinct in late 2014.

35.     Notably, multiple other Hispanic officers engaged in similar behavior with no consequences. Sergeant Ramirez collected money from subordinate officers when Officer Paul Velez' sister passed away. Lieutenant Iris Espinosa also sold subordinate officers cookies for Inspector Rivera's child's school fundraiser. In Spring 2017, Espinosa solicited money during roll call from subordinate officers to fundraise for an EMT that was murdered on duty. Espinosa attempted to flout Defendant's policy by sending officers to solicit the same funds. From December 2016 to May 2017, Sergeant Beharry witnessed Sergeant Alex Fernandez selling cigars to subordinate officers from his desk and on patrol. Fernandez never received disciplinary action for this behavior. After the death of Officer Familia, precinct commanding officers strongly requested all officers purchase t-shirts and pins to raise money in violation of Defendant's policy. These Hispanic officers were never issued command disciplines or questioned for accepting funds from subordinate officers.

36.     On December 2, 2016, Lieutenant Espinosa issued a command discipline against Sgt. Beharry for failure to submit the slip in a timely manner, citing the seven hours from July 2016 along with a few other submissions. Espinosa had received the paperwork on numerous occasions in a timely manner before December; she had simply refused to grant Sgt. Beharry's requests for cash compensation. Espinosa commonly would place rejected overtime slips into the

bottom of officers' paperwork piles to avoid detection. Sgt. Beharry signed to command discipline to move on, and Defendant docked Mr. Beharry one day of vacation.

37. On December 22, 2016, Sergeant Wong notified Sgt. Beharry that he was being assigned to day tours. Since the denial of a preferred supervisory sergeant role in March 2016, Sgt. Beharry had been working midnight shifts which still allowed him to enjoy family life. Sgt. Beharry met with Inspector Rivera and Ghonz to explain this shift change would severely affect his personal life. Considering Sgt. Beharry's seventeen years on the force and eight years in a supervisory role, based upon experience and seniority he should have been considered for a more preferential shift. Rivera simply stated Sgt. Beharry would no longer be allowed to stay on midnight shifts at the direction of Lieutenant Lewis. Sgt. Beharry was then assigned to cover shifts from 4pm to midnight, which is the busiest tour in the precinct with the largest number of officers to supervise. Assignment to this shift without regard for Sgt. Beharry's experience or seniority effectively constituted a demotion.

38. In February 2017, Defendant issued charges based upon the July 20, 2016 incident and allegedly accepting funds from subordinate officers. Defendant issued a penalty of two lost vacation days for the money collection issue and eight lost vacation days for the July 20 command discipline. Sgt. Beharry refused to sign the charges based upon the underlying discriminatory animus which lead to their issuance.

39. In March 2017, Sgt. Beharry experienced insubordination from Officer Duran, who was unaccounted for on her shift for two hours. When Sgt. Beharry questions Duran, she made excuses for her absence. Sgt. Beharry then directed Duran and her partner to relieve two other officers, which they failed to do. Sgt. Beharry wanted to report Duran through Defendant's Craft reporting system, but Sgt. Ching discouraged him, reminding Sgt. Beharry that issuing a discipline

against an Hispanic officer might call attention to the charges pending against Sgt. Beharry as well as cause problems with a potential promotion. Sgt. Beharry was unable to perform his responsibilities effectively for fear of inviting further retaliation.

40. In April 2017, Sergeant Beharry heard Lieutenant Ravelo speaking with Sergeant Fernandez in Spanish, stating "I want you not Chino to be the crime sergeant." Ravelo was referring to Sergeant Ching.

41. On June 6, 2017, Sgt. Beharry filed a complaint for racial discrimination with the Equal Employment Opportunity Commission.

42. In October 2017, Defendant issued a command discipline against Sergeant Beharry for failure to make a command log entry for unlawful possession of marijuana, resulting in a one-hour time penalty.

43. In November 2017, Defendant issued a command discipline for failure to sign a court notification recap, despite Sergeant Beharry indicating that all notifications were properly signed and returned. Espinosa still pursued disciplinary action against Sergeant Beharry.

44. In August 2017, Inspector Aramboles recommended multiple times that Sergeant Beharry request a transfer. Aramboles recommended transfers to multiple non-Hispanic officers after transferring to the precinct. Sergeant Pirando also suggested that Sergeant Beharry should transfer out of the precinct because the supervisors were targeting him.

45. In August 2017, Defendant issued a Performance Evaluation against Sgt. Beharry with an overall score of 3.5 out of 5. This evaluation should have been issued in January or February 2017. Sgt. Beharry was on medical leave for approximately three weeks to treat his Chron's disease at that time. Previously Sgt. Beharry consistently received scores of 4.0 or higher. Lieutenant Batista indicated that Defendant issued Sgt. Beharry a lower score because he was on

medical leave. Receiving a score of 4.0 or higher enables an officer to pursue a supervisory role with the Supervisory Assignment Board with weekends off and overtime eligibility. Defendant issued Sgt. Beharry's review of 3.5 in order to inhibit his ability to pursue increased salary or preferential assignments.

46. In November 2017, Aramboles unnecessarily delayed approval of Sgt. Beharry's off-duty employment paperwork.

47. On December 7, 2017, the EEOC concluded its investigation of Sgt. Beharry's discrimination claims.

48. On December 27, 2017, Defendant notified Mr. Beharry he had been placed on a baseless Performance Monitoring plan. Defendant stated that this plan had been in effect since December 1, 2017, within a week of the conclusion of the EEOC complaint, unbeknownst to Sergeant Beharry.

49. Defendants have treated Mr. Beharry differently as compared to similarly-situated Hispanic employees regarding opportunities for supervisory positions and pretextual disciplinary actions. Defendant harassed and discriminated against Mr. Beharry in compensation and in the terms, conditions, and privileges of his employment on account of his race and retaliation.

**FIRST CAUSE OF ACTION AGAINST DEFENDANT**
**(DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C. § 1981)**

50. Mr. Beharry repeats and realleges every paragraph above, as if fully set forth herein.

51. Mr. Beharry is a member of a racial minority.

52. Defendant and/or its agents intended to discriminate against Mr. Beharry on the basis of his race.

53. Defendant's discrimination the discrimination concerned one of the activities protected by the Civil Rights Act of 1964, 42 U.S.C. §1981.

54. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the Civil Rights Act of 1964, 42 U.S.C. §1981, Mr. Beharry suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### SECOND CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF 42 U.S.C. §2000)

55. Mr. Beharry repeats and realleges every paragraph above, as if fully set forth herein.

56. Mr. Beharry is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

57. Mr. Beharry possessed proper qualifications for Defendant to grant him a preferential supervisory position and overtime opportunities.

58. Defendant's repeated improper denials of overtime and preferential supervisory roles adversely affected Mr. Beharry's employment.

59. The circumstances previously herein set forth give rise to the inference of racial discrimination by Defendant.

60. The Defendant continue to discriminate against Mr. Beharry and violate his Civil Rights to this date.

61. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 §703(a), Mr. Beharry suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW § 296)

62. Mr. Beharry repeats and realleges every paragraph above, as if fully set forth herein.

63. Mr. Beharry is a member of a protected class pursuant to New York Executive Law § 296.

64. Mr. Beharry possessed proper qualifications for Defendant to grant him a preferential supervisory position and overtime opportunities.

65. Defendant's repeated improper denials of overtime and preferential supervisory roles adversely affected Mr. Beharry's employment.

66. The circumstances previously herein set forth give rise to the inference of racial discrimination.

67. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Exec. Law §296, Mr. Beharry suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF N.Y.C. ADMIN. CODE §8-107)

68. Mr. Beharry repeats and realleges every paragraph above, as if fully set forth herein.

69. Mr. Beharry is a member of a protected class pursuant to New York City Administrative Code § 8-107.

70. Mr. Beharry possessed proper qualifications for Defendant to grant him overtime opportunities and preferential supervisory positions.

71. Defendant's repeated improper denials of overtime and preferential supervisory roles adversely affected Mr. Beharry's employment.

72. The circumstances previously herein set forth give rise to the inference of racial discrimination.

73. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of N.Y.C. Admin. Code §8-107, Mr. Beharry suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANT
### (RETALIATION IN VIOLATION OF 42 U.S.C. §2000)

74. Mr. Beharry repeats and realleges every paragraph above, as if fully set forth herein.

75. Mr. Beharry engaged in an activity protected by 42 U.S.C. § 2000e-3 by lodging a complaint with Defendant of race discrimination in November 2015.

76. Defendant was aware of Mr. Beharry's complaint.

77. Defendant took adverse action as a result of Mr. Beharry's complaint, including improper denials of overtime, preferential supervisory roles, and the actions set forth in the preceding paragraphs.

78. The circumstances previously herein set forth give rise to the inference of retaliation by Defendant.

79. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of 42 U.S.C. § 2000e-3, Mr. Beharry suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and

anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### SIXTH CAUSE OF ACTION AGAINST DEFENDANT
### (RETALIATION IN VIOLATION OF N.Y. EXEC. LAW § 296(7))

80. Mr. Beharry repeats and realleges every paragraph above, as if fully set forth herein.

81. Mr. Beharry engaged in an activity protected by N.Y. Exec. Law § 296(7) by lodging a complaint with Defendant of race discrimination in November 2015.

82. Defendant was aware of Mr. Beharry's complaint.

83. Defendant took adverse action as a result of Mr. Beharry's complaint, including improper denials of overtime, preferential supervisory roles, and the actions set forth in the preceding paragraphs.

84. The circumstances previously herein set forth give rise to the inference of retaliation by Defendant.

85. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Exec. Law § 296(7), Mr. Beharry suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### SEVENTH CAUSE OF ACTION AGAINST DEFENDANT
### (RETALIATION IN VIOLATION OF N.Y.C. ADMIN. CODE § 8-107(7))

86. Mr. Beharry repeats and realleges every paragraph above, as if fully set forth herein.

87. Mr. Beharry engaged in an activity protected by N.Y.C. Admin. Code §8-107(7) by lodging a complaint with Defendant of race discrimination in November 2015.

88. Defendant was aware of Mr. Beharry's complaint.

89. Defendant took adverse action as a result of Mr. Beharry's complaint, including improper denials of overtime, preferential supervisory roles, and the actions set forth in the preceding paragraphs.

90. The circumstances previously herein set forth give rise to the inference of retaliation by Defendant.

91. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y.C. Admin. Code §8-107(7), Mr. Beharry suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Mr. Beharry prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A. A declaratory judgment that actions, conduct, and practices of Defendant complained of herein violate the laws of the United States and the State and City of New York;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An award of damages in the amount to be determined at trial, plus prejudgment interest, to compensate Mr. Beharry for all monetary and/or economic harm;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mr. Beharry for all non-monetary and/or compensatory harm, including but not limited to, compensation for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

    E.    An award of damages for any and all other monetary/non-monetary losses suffered by Mr. Beharry in an amount to be determined at trial, plus prejudgment interest;

    F.    An award of punitive damages;

    G.    An award of costs that Mr. Beharry incurred in this action, as well as Mr. Beharry's reasonably attorneys' fees to the fullest extent permitted by law; and

    H.    Such other and further relief as the Court may deem just and proper.

New York, New York
Dated: June 27, 2018

                                  Respectfully submitted,

*[signature]*

                                  M. Dinora Smith (MS2096)
                                White, Nisar & Hilferty, LLP
                                *Attorneys for Plaintiff*
                                *Tell Beharry*
                                570 Lexington Avenue, 16th Floor
                                New York, New York 10022
                                (646) 690-8881