USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/19/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Tell Beharry,

          Plaintiff,

      —v—

The City of New York,

          Defendant.

---

18-CV-2042 (AJN)

MEMORANDUM OPINION
AND ORDER

ALISON J. NATHAN, District Judge:

Now before the Court is Defendant's Motion for Summary Judgment on Plaintiff's Title VII, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") discrimination claims. For the reasons that follow, Defendant's motion is GRANTED.

## I.    Procedural Background

As recounted in Plaintiff's second amended complaint (Dkt. No. 17, hereinafter "SAC"), on June 6, 2017, he filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). SAC ¶ 12. On December 7, 2017, the EEOC issued Mr. Beharry a notice of right to file suit. SAC ¶ 7. Plaintiff filed the complaint in this case on March 6, 2018. Dkt. No. 1. He then filed the first amended complaint on April 19, 2018. Dkt. No. 7. Defendant moved to dismiss the first amended complaint, *see* Dkt. No. 11, and Plaintiff subsequently filed a second amended complaint on June 27, 2018. Dkt. No. 17.

On February 14, 2019, the Court granted Defendant's motion to dismiss (1) all of Plaintiff's claims premised on allegations that Plaintiff alleged occurred before August 10, 2016; (2) Plaintiff's § 1981 claim; (3) Plaintiff's Title VII retaliation claim; (4) Plaintiff's NYSHRL

1

retaliation claim; and (5) Plaintiff's NYCHRL retaliation claim.  Dkt. No. 29 (hereinafter "MTD Op.") at 11.  The Court denied Defendant's motion to dismiss Plaintiff's Title VII, NYSHRL discrimination, and NYCHRL discrimination claims.  *Id.* at 12.  On December 16, 2019, Defendant moved for summary judgment on the remaining claims.  Dkt. No. 57.  Plaintiff filed his response to Defendant's motion for summary judgment on January 27, 2020.  Dkt. No. 63 ("Pl. Opp. Br.").  Defendant filed its reply on February 24, 2020.  Dkt. No. 66.

## II.    Factual Background

The Court assumes the parties' familiarity with the factual background and recounts the relevant facts for purposes of resolving this motion.  Except as otherwise noted, the following facts are not in dispute and are taken from Plaintiff's Response to Defendant's Rule 56.1 Statement of Material Undisputed Facts and supplemental affirmative statement.  Dkt. No. 63, Ex. 1 (hereinafter "Pl.'s 56.1 Resp.").

### A.  Allegations that Plaintiff Wrongfully Solicited Money from Subordinates

On or around December 8, 2015, the Internal Affairs Bureau ("IAB") of the NYPD received an anonymous letter that alleged that Plaintiff had requested money from his subordinates on multiple occasions.  Pl.'s 56.1 Resp. ¶ 3.  The IAB investigated the allegations; over the course of the investigation, IAB interviewed twenty officers, five of whom stated that they gave Mr. Beharry money.  Pl.'s 56.1 Resp. ¶¶ 5, 7.  The IAB also interviewed Plaintiff, who admitted that he solicited money from subordinate officers.  Pl.'s 56.1 Resp. ¶¶ 6, 9.  In the interview, he claimed that he sought money to purchase office supplies and items for an office party.  Pl.'s 56.1 Resp. ¶ 9.  Because of the allegations, Plaintiff was issued an "A" command discipline on January 11, 2017.  Pl.'s 56.1 Resp. ¶ 11.  As a result, he lost two vacation days.  Pl.'s 56.1 Resp. ¶ 13.

Mr. Beharry alleges that Lieutenant Iris Espinosa, Sergeant Alex Fernandez, and Inspector Philip Rivera also solicited money from subordinates. Pl.'s 56.1 Resp. ¶ 14. He also notes that he believes that he reported the conduct of Lieutenant Espinosa, Sergeant Fernandez, and Inspector Rivera, though in his deposition he could not recall when or to whom he reported their conduct. Pl.'s 56.1 Resp. ¶ 18. The parties agree that Plaintiff does not know whether any or all of them were ever investigated or otherwise disciplined. Pl.'s 56.1 Resp. ¶ 17.

**B.  July 20, 2016 Incidents And Subsequent Discipline**

On July 20, 2016, three of Plaintiff's subordinates responded to a report of an assault with a weapon in progress. Pl.'s 56.1 Resp. ¶ 20–21. Plaintiff did not respond to the scene until several hours later. Pl.'s 56.1 Resp. ¶ 21. Upon arriving at the scene, Plaintiff incorrectly established the crime scene outside, despite the fact that the incident occurred indoors. Pl.'s 56.1 Resp. ¶ 22. Though Plaintiff concedes this, he alleges that he only did so because the police were informed that the stabbing had occurred outdoors. Pl.'s 56.1 Resp. ¶ 22.

In a hearing that took place on October 25, 2016, Plaintiff was questioned about his conduct on July 20, 2016. Pl.'s 56.1 Resp. ¶ 23. At the hearing, Sergeant Patrick Lynch questioned Plaintiff about improperly accepting a knife on the night in question;[1] despite this line of questioning, however, Plaintiff was never disciplined for this. Pl.'s 56.1 Resp. ¶ 25–27. Nonetheless, on December 20, 2016, Lieutenant Espinosa reported Plaintiff for "fail[ing] (1) in his duty as patrol supervisor to properly supervise 'uniform member of the service under his supervision;'" and (2) 'fail[ing] to promptly respond to a crime scene of an assault with a weapon in progress.'" Pl.'s 56.1 Resp. ¶ 28. Following this, on February 15, 2017, Inspector Rivera substantiated the allegations against Plaintiff and issued a "B" command discipline,

---

[1] Plaintiff claims that Lieutenant Espinosa prompted Sergeant Lynch to ask about his having improperly accepted a knife. Pl.'s 56.1 Resp. ¶¶ 25–27.

which is more serious than an "A" command discipline.  Pl.'s 56.1 Resp. ¶ 29.  Inspector Rivera

accordingly recommended that Plaintiff lose ten vacation days.  Pl.'s 56.1 Resp. ¶ 29.

Plaintiff refused to accept Inspector Rivera's recommendation, and the allegations were

referred to the NYPD's Department Advocate's Office for prosecution.  Pl.'s 56.1 Resp. ¶ 33.

On October 17, 2017, Plaintiff was served with charges and specifications for "(1) failing to

'immediately respond to and direct activities at a radio run of an assault with a knife'; and (2)

making misleading statements during his interview on October 25, 2016 concerning his

communications with Police Officer Corlette."  Pl.'s 56.1 Resp. ¶ 34.  The charges and

specifications are still pending, and no disciplinary action has followed from the December 20,

2016 command discipline.  Pl.'s 56.1 Resp. ¶ 35.  In light of the pending charges and

specifications, Plaintiff was placed on a "Level 1 – Discipline Monitoring Performance

Monitoring Plan," effective December 1, 2017.  Pl.'s 56.1 Resp. ¶ 37.

The parties agree that Lieutenant Gabriel Healy, who was also on duty on July 20, 2016,

received a command discipline in the aftermath of the July 20, 2016 incident.  Pl.'s 56.1 Resp. ¶¶

30–31.  Plaintiff alleges that Lieutenant Healy's command discipline was only "a slap on the

wrist," but he concedes that he does not know the substance of Lieutenant Healy's command

discipline.  Pl.'s 56.1 Resp. ¶¶ 24, 30, 31.  Plaintiff further claims that three other supervisors—

"Sgt. Tirado, Sgt. Doria and Sgt. Smith"—were on duty on July 20, 2016.  Pl.'s 56.1 Resp. ¶ 24.

According to Plaintiff, the three of them "neglected their responsibilities that night."  Pl.'s 56.1

Resp. ¶ 24.  Neither of the parties expressly asserts whether Sgt. Tirado, Sgt. Doria and Sgt.

Smith received command disciplines in connection with the July 20, 2016 incident.

**C.  Plaintiff's Other Command Disciplines**

In addition to the aforementioned disciplinary incidents, Plaintiff received an additional six command disciplines during the time in question.  *First*, in May 2015, Plaintiff was issued a command discipline after he failed to enter a report of a grand larceny into the complaint report system on or around January 5, 2015.  Pl.'s 56.1 Resp. ¶ 40.  Plaintiff alleges that, in contrast, Sgt. Angel Gonzalez, who according to Plaintiff identifies as a Hispanic officer, was not issued a command discipline for failing to ensure that his subordinates were wearing ballistic vests on an unidentified date.  Pl.'s 56.1 Resp. ¶ 41.

*Second*, on April 29, 2016, Plaintiff was issued a schedule "A" command discipline for failing to respond to and investigate a second-degree assault.  Pl.'s 56.1 Resp. ¶ 43–45.  Plaintiff accepted the proposed discipline on May 20, 2016.  Pl.'s 56.1 Resp. ¶ 46.  Plaintiff alleges that this write-up was frivolous, and that non-African American sergeants were not written up for similar conduct, though he does not identify any such circumstances.  Pl.'s 56.1 Resp. ¶¶ 46–47.

*Third*, on June 4, 2016, Plaintiff was issued another schedule "A" command discipline; Captain Ghonz reported Plaintiff for failing "to properly deploy . . . personnel according to the [NYPD]'s N[eighborhood] C[oordination] O[fficer]-steady sector guidelines," and Inspector Rivera substantiated the violation.  Pl.'s 56.1 Resp. ¶¶ 48–51.  Plaintiff signed the command discipline on June 4, 2016, accepting Inspector Rivera's finding and recommendation that Plaintiff be warned and admonished.  Pl.'s 56.1 Resp. ¶¶ 51–52.  Plaintiff alleges that Captain Ghonz did not issue command disciplines against non-African American sergeants, but does not identify any specific misconduct that went unreported or any sergeants whose conduct was overlooked by Captain Ghonz.  Pl.'s 56.1 Resp. ¶ 53.

*Fourth*, on December 2, 2016, Lieutenant Espinosa reported Plaintiff for "failing, on July 20, 2016, to comply with 46th Precinct court guidelines regarding lateness after he was properly

notified of those guidelines" and for "submitting late overtime reports on July 20, 2016, September 17, 2016, and September 18, 2016." Pl.'s 56.1 Resp. ¶ 54. Inspector Rivera substantiated the report on December 6, 2016, issued Plaintiff another schedule "A" command discipline, and recommended that Plaintiff lose one vacation day as discipline. Pl.'s 56.1 Resp. ¶ 55. That same day, Plaintiff accepted Inspector Rivera's finding and proposed disciplinary action. Pl.'s 56.1 Resp. ¶ 56.

*Fifth*, on September 12, 2017, Lieutenant Espinosa reported Plaintiff for failing to make the required log entry in connection with an arrest that took place on August 18, 2017. Pl.'s 56.1 Resp. ¶¶ 57–58. Inspector Wilson Aramboles substantiated the report on October 12, 2017, issuing a schedule "A" command discipline and recommending that Plaintiff be deducted one hour of compensatory time. Pl.'s 56.1 Resp. ¶ 59. Also on October 12, 2017, Plaintiff accepted Inspector Aramboles's finding and proposed disciplinary action. Pl.'s 56.1 Resp. ¶ 60.

*Sixth*, on November 8, 2017, Lieutenant Espinosa reported Plaintiff for failing to "fill out and verify the notification recap sheet" and for failing to "ensure that some notifications were properly collected and attached to the recap sheet." Pl.'s 56.1 Resp. ¶¶ 61–62. Inspector Aramboles substantiated the report and issued Plaintiff a schedule "A" command discipline on January 15, 2018, recommending that Plaintiff be deducted two hours of vacation time. Pl.'s 56.1 Resp. ¶ 63. Plaintiff had accepted Inspector Aramboles's finding and proposed disciplinary action on January 11, 2018. Pl.'s 56.1 Resp. ¶ 64.

### D. Plaintiff's Interest in a Preferential Assignment

Following the conclusion of a program under his supervision on March 23, 2016, Plaintiff verbally requested an assignment to a preferential supervisory role. Pl.'s 56.1 Resp. ¶ 65. Plaintiff did not apply to a particular assignment; rather, he expressed interest in one that

included weekends off and that "fell within the preferential avenue." *See* Pl.'s 56.1 Resp. ¶¶ 65–68.  Both parties agree that such a role would not be accompanied by a change in title or an increase in salary but would include overtime opportunities and weekends off.  Pl.'s 56.1 Resp. ¶ 67.  Plaintiff discussed his interest with Inspector Rivera, and he "mentioned something" to Inspector John Lewis.  Pl.'s 56.1 Resp. ¶ 69.  Notwithstanding this verbal request, Plaintiff apparently did not submit a paper application to the "Supervisory Assignment Board," which processes applications for preferential positions.  Pl.'s 56.1 Resp. ¶ 70.  According to Plaintiff, he submitted a paper application to either Inspector Lewis or "Sergeant Brown," but it was returned to him for correction.  Pl.'s 56.1 Resp. ¶ 72.  The parties never explain whether Plaintiff subsequently submitted a corrected paper application.  Plaintiff further alleges that a precinct's "Special Projects Lieutenant" may also appoint an officer to a preferential role; according to Plaintiff, the Special Projects Lieutenant in the 46th Precinct was Lieutenant Lagrass.  Pl.'s 56.1 Resp. ¶ 71.  Neither of the parties indicates whether Plaintiff in fact sought such appointment from Lieutenant Lagrass.

According to Plaintiff, he had multiple conversations with other officers about whether he would receive support if he were to submit an application to the supervisory assignment board.  He alleges to have spoken to Inspector Rivera twice about it—once before July 20, 2016 and once after, and Plaintiff claims that even after the July 20, 2016 incident, Inspector Rivera indicated a willingness to endorse Plaintiff's application "after everything was done."  Pl.'s 56.1 Resp. ¶¶ 73–74.  He further notes that when he spoke to Inspector Lewis about this, Inspector Lewis indicated that Inspector Rivera would not endorse the application due to the open investigation into the July 20, 2016 incident.  Pl.'s 56.1 Resp. ¶ 75–76.

Plaintiff claims that seven Hispanic officers—Sergeant Edward Arias, Sergeant Francisco Fernandez, Sergeant Alex Fernandez, Sergeant Albert Puente, Sergeant Vladimir Garcia, Sergeant Kelvin Garcia, and Sergeant Elvin Pichardo—all received preferential roles at some point, though (according to Plaintiff) they had less experience than him.  Pl.'s 56.1 Resp. ¶ 77. Plaintiff makes a series of allegations about each of those officers, related both to the preferential roles they were given and the officers' relative qualifications.  Pl.'s 56.1 Resp. ¶ 78–82. Throughout, Plaintiff asserts a belief that, either due to disciplinary issues, a lack of experience, or both, they were less qualified than him.  Pl.'s 56.1 Resp. ¶ 78–82.  But Plaintiff professes a lack of personal knowledge about whether they applied for those roles, when they applied, what roles they received, how many years of experience they had when they received the preferential roles, whether they were subject to disciplinary actions or IAB investigations before they assumed those supervisory roles, and other such information.  Pl.'s 56.1 Resp. ¶ 78–84.

### E.  Plaintiff's Shift Assignments

From March 2016 to December 2016, Plaintiff was assigned to the "midnight shift," which runs from around 11:05 P.M. to 8:02 A.M.  Pl.'s 56.1 Resp. ¶ 85.  Though Plaintiff found certain aspects of the midnight shift burdensome—in particular, that he did not have weekends off—he enjoyed other aspects of it.  *See* Pl.'s 56.1 Resp. ¶¶ 78–87.  On December 22, 2016, Plaintiff's shift was changed to the "day tour," which runs from approximately 4 P.M. to 12 A.M.  Pl.'s 56.1 Resp. ¶ 88.  Plaintiff saw this change as a "demotion," in part because "it was 'chaotic,' and that he had to 'work[] . . . much harder on that tour,' [and] he had to supervise 'people that are tough to supervise.'"  Pl.'s 56.1 Resp. ¶¶ 90–91 (quoting Dkt. No. 59, Ex. B at 68:7-8, 12-20).  Plaintiff asserts that he was entitled to a more preferential assignment, given his level of experience and seniority.  Pl.'s 56.1 Resp. ¶¶ 92–93.

8

**F. Overtime Issues and Transfer**

Plaintiff also asserts a series of allegations having to do with overtime assignments. Underlying this dispute is Plaintiff's allegation that he was denied overtime as a result of his race; nonetheless, neither of the parties has identified record evidence that substantiates this belief. Pl.'s 56.1 Resp. ¶¶ 94–95.

The parties disagree as to how Plaintiff was compensated for seven hours of overtime that Plaintiff undertook in connection to the July 20, 2016 incident. Defendant alleges that Plaintiff was compensated in cash; Plaintiff contends that he was the overtime was instead "taken in hours against his normal schedule." Pl.'s 56.1 Resp. ¶ 94. Plaintiff identifies Lieutenant Espinosa as the person responsible for denying him overtime in cash compensation. Pl.'s 56.1 Resp. ¶ 94. The parties also appear to disagree as to the level of overtime opportunities that Plaintiff received following July 20, 2016. They agree that Plaintiff received overtime cash compensation for overtime assignments worked on twenty-four occasions. Pl.'s 56.1 Resp. ¶ 95. But according to Plaintiff, he was "given" all of those assignments; he asserts that, following July 20, 2016, "all of his overtime *requests* were denied." Pl.'s 56.1 Resp. ¶¶ 94–95 (emphasis added). Plaintiff concedes that he was compensated for all of the overtime assignments he was "given." Pl.'s 56.1 Resp. ¶¶ 94–95.

In addition to the overtime issues, Plaintiff makes a series of allegations about pressure he felt to transfer to another precinct. According to Plaintiff, in or around August 2017 he spoke to Inspector Aramboles about a potential transfer. Pl.'s 56.1 Resp. ¶ 96. According to Plaintiff, Inspector Aramboles had previously recommended transfers to other non-Hispanic officers. Pl.'s 56.1 Resp. ¶ 99. The parties disagree on whether Plaintiff's claim is substantiated. Defendant asserts that Plaintiff "does not allege who Inspector Aramboles spoke to or what was discussed;"

Plaintiff counters that he bases this belief on the "higher number of transfers" from the 46th Precinct.  Pl.'s 56.1 Resp. ¶ 99.

### G. Plaintiff's Performance Evaluation and Other Allegations

The next set of factual allegations revolve around Plaintiff's claim that he received a mediocre evaluation in August 2017.  *See* Pl.'s 56.1 Resp. ¶ 100–05.  It is undisputed that, for the rating period that extended from January 16, 2016 to January 17, 2017, Lieutenant Jose Batista gave Plaintiff an overall rating of 3.5 out of a possible 5.  Pl.'s 56.1 Resp. ¶ 101. According to Plaintiff, anything lower than a 4 out of 5 would preclude him from receiving the preferential assignment that he sought—one that included weekends off and overtime eligibility. Pl.'s 56.1 Resp. ¶ 102.  Plaintiff asserts that Lieutenant Batista grounded his justification for the score on the basis that Plaintiff was on medical leave.  Pl.'s 56.1 Resp. ¶ 104.

Plaintiff also avers that on January 3, 2016, he responded to a shooting and that, while Plaintiff was speaking to other officers on the scene, Lieutenant Ravelo told him to resume his patrol; he claims that Lieutenant Ravelo "always looked out" for Hispanic sergeants and lieutenants.  Pl.'s 56.1 Resp. ¶¶ 106–107 (citing Dkt. No. 59, Ex. B at 23:3-10).  In addition, Plaintiff submitted an Off-Duty Employment Application to engage in off-duty employment with Omniscient Investigation Corp on November 23, 2017.  Inspector Aramboles approved Plaintiff's request on December 19, 2017.  Pl.'s 56.1 Resp. ¶ 108.

### III.   Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is warranted where the admissible evidence and the pleadings "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005).  The

moving party bears the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Id.* at 323.  A fact is material if it "might affect the outcome of the suit under the governing law," and an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A moving party may satisfy its burden by demonstrating that the non-moving party, "after adequate time for discovery," has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) ("A defendant is entitled to summary judgment where the plaintiffs have failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim on which the plaintiffs bear the burden of proof." (internal quotation marks omitted)).

If the movant satisfies its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted).  That is, it must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, the non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. *Gottlieb v. Cnty. of Orange,* 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted); *see also Ridinger v. Dow Jones & Co., Inc.*, 651 F.3d 309, 317 (2d Cir. 2011) (noting that "conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." (internal quotation marks and citation omitted)); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation,

however, are insufficient to create a genuine issue of fact.").  And the nonmoving party must also show that the disputed facts are material; "[f]actual disputes that are irrelevant or unnecessary" do not preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 248.

"When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys*, 426 F.3d at 553; *see also Anderson*, 477 U.S. at 255 (at summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor").  "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  *Rule v. Brine, Inc.* 85 F.3d 1002, 1011 (2d Cir. 1996); *see also Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996) (at summary judgment, the court "should not weigh the evidence or assess the credibility of witnesses.").  The question for the Court at this stage is "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *Anderson*, 477 U.S. at 252.  Still, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*

The Court of Appeals "has repeatedly emphasized the need for caution about granting summary judgment to an employer in a discrimination case . . . where the merits turn on a dispute as to the employer's intent."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted).  "Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotation marks omitted).

Nevertheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Gorzynski*, 596 F.3d at 101 ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment . . . and show more than some metaphysical doubt as to the material facts." (citations and internal quotation marks omitted)); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## IV.   Discussion

Race discrimination claims brought under Title VII, the NYSHRL, and the NYCHRL are evaluated under the burden-shifting framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See, e.g.*, *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999) (NYSHRL).  Though the NYCHRL has more liberal standards than do its federal and state counterparts, courts in the Second Circuit typically "appl[y][the] liberal standards [of the NYCHRL] to the basic *McDonnell Douglas* framework." *Farzan v. Wells Fargo Bank, N.A.,* No. 12-CV-1217 (RJS) (JLC), 2013 WL 6231615, at *15 (S.D.N.Y. Dec. 2, 2013) (collecting cases).

Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802.  To establish a *prima facie* case of discrimination under Title VII and the NYSHRL, the plaintiff must show that: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered a materially adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citing *Holcomb v. Iona College,* 521 F.3d 130, 138 (2d Cir. 2008)); *see also Beyer v. Cty.*

*of Nassau*, 524 F.3d 160, 163–64 (2d Cir. 2008) (discussing what constitutes "sufficiently disadvantageous" employment actions as to satisfy the third prong); *Jeune v. City of New York*, No. 11-CV-7424 (JMF), 2014 WL 83851, at *4 (S.D.N.Y. Jan. 9, 2014) (explaining that the third prong requires a showing of a "materially adverse employment action").  Under the NYCHRL, meanwhile, the adverse employment action need not be "material," though it still must be "more than trivial, insubstantial, or petty." *Jeune*, 2014 WL 83851, at *4.  If the plaintiff is able to establish a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse action.  *McDonnell Douglas,* 411 U.S. at 802.  The burden then reverts to the plaintiff, who must show that the defendant's "stated reason . . . was in fact pretext."  *Id.* at 804–05.  To do so, the plaintiff must show "*both* that the [stated] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993).

## A.   Title VII Race Discrimination Claim Against the City

For the reasons that follow, Defendant's motion for summary judgment is GRANTED. In its Memorandum of Law in Support of its Motion for Summary Judgment, Defendant asserts: *first*, that Plaintiff cannot establish a *prima facie* case of discrimination because the circumstances he alleges do not constitute materially adverse actions; *second*, that Plaintiff cannot establish a *prima facie* case of discrimination because there exist no genuine issues of material fact that could support an inference of discrimination; *third*, that Defendant satisfied its burden of establishing legitimate, nondiscriminatory reasons for its decisions; and *fourth*, that Plaintiff cannot establish that Defendant's stated nondiscriminatory reasons are pretextual.  *See* Dkt. No. 60 ("Def. Br.") at 3, 14.

### 1.   *Prima Facie* Case of Discrimination

As discussed above, to establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered a materially adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Brown*, 673 F.3d at 150.  Here, Defendant does not dispute that Mr. Beharry, who is African American, is a member of a protected class. Nor does Defendant contest that he was qualified for the position he held.  Instead, Defendant argues first that Plaintiff cannot satisfy the third prong of the test because he suffered no materially adverse employment action, and second, that Plaintiff cannot satisfy the fourth prong of the test because he cannot prove that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See* Def. Br. at 3.

### a.  Materially Adverse Action

The Second Circuit has held that "[t]o be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (citing *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation and internal quotation marks omitted).  Typically, negative reports, negative feedback, and inferior ratings do not constitute an adverse employment action for purposes of Title VII.  *See Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 53 (S.D.N.Y. 2019); *see also Durick v. New York City Dep't of Educ.*, 202 F. Supp. 3d 277, 287 (E.D.N.Y. 2016) ("[N]egative performance evaluations do not, without more, constitute adverse employment actions."); *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 213 (E.D.N.Y. 2014) ("Criticism of an employee in the course of evaluating and correcting his or her work is not, in and of itself, a materially adverse

employment action.") (citation omitted).  But if such negative evaluations and reports "trigger other negative consequences in the terms and conditions of the plaintiff's employment," they can rise to the level of materially adverse.  *Dimitracopoulos*, 26 F. Supp. 3d at 214 (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002)); *see also Zoulas*, 400 F. Supp. 3d at 53–54.

Plaintiff presents various examples he claims rise to the level of materially adverse employment actions.[2]  For instance, he claims that changes in his shift assignments effected materially adverse changes to the terms of his employment.  Pl. Opp. Br. at 7–8.  As a general matter, however, "receiving unfavorable schedules or work assignments" generally "do[es] not rise to the level of" an adverse employment action in the discrimination context.  *Katz v. Beth Israel Med. Ctr.*, No. 95-CV-7183 (AGS), 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001); *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) (discussing the differences between the materially adverse analysis in the discrimination and retaliation contexts and observing that plaintiffs face a higher bar in the discrimination context).  Plaintiff has not raised any genuine issue of material fact that bears on whether the changes in his shift assignments were materially adverse, *see, e.g.*, Pl. Opp. Br. at 6–8, even after all reasonable inferences are drawn in his favor.  At least with respect to the shift assignments, Plaintiff's argument appears to be frustration at not receiving his *preferred* work assignment.  For example, at different points, Plaintiff has argued both that being assigned to the midnight shift was "burdensome" and rose to the level of an adverse employment action and that being transferred off of the midnight shift also rose to the level of an adverse employment action.  Pl.'s 56.1 Resp. ¶¶ 86, 90.  His arguments as to the shift changes, considered as a whole and drawing all

---

[2] As discussed below, at least some of Plaintiff's claims are time-barred.  *See* MTD Op. at 5.  Nevertheless, the Court here discusses why, even if they were not time-barred, Plaintiff's claims would not prevail.

reasonable inferences in his favor, still do not establish material adversity. *See Katz*, 2001 WL 11064, at *14. Furthermore, Plaintiff's argument is undermined by a lack of evidentiary support, insofar as he presents no evidence of the detrimental effects of being assigned to the midnight shift or of being removed from the midnight shift and being placed on the day tour. *See Selevan*, 711 F.3d at 256 ("A defendant is entitled to summary judgment where the plaintiffs have failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim on which the plaintiffs bear the burden of proof." (internal quotation marks omitted)).

Plaintiff also asserts that the myriad command disciplines—which Plaintiff describes as "unwarranted"—and the average performance rating in his evaluation served "to inhibit future earnings and promotion possibilities," which in turn denied him "opportunities for professional growth and career advancement." Pl. Opp. Br. at 7–8. As an initial matter, Plaintiff must show something more than that he was disciplined and that he received an average performance evaluation. "[D]isciplinary memoranda and evaluations are adverse employment actions only if they affect ultimate employment decisions such as promotion, wages, or termination." *Regis v. Metro. Jewish Geriatric Ctr.*, No. 97-CV-0906 (ILG), 2000 WL 264336, at *8 (E.D.N.Y. Jan. 11, 2000) (citing *Johnson v. Frank,* 828 F. Supp. 1143, 1153 (S.D.N.Y.1993)). Plaintiff does allege that the various command disciplines and the performance evaluation denied him opportunities for professional growth. But he proffers no evidence in support of this theory, instead advancing only conclusory allegations. "Genuine issues of fact are not created by conclusory allegations." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). The same holds true for Plaintiff's claim regarding the effects of the February 15, 2017 "B" command discipline, which related to the July 20, 2016 incidents and which included an

17

admonishment for failure to supervise.[3]  *See* Pl.'s 56.1 Resp. ¶¶ 29–37.  In his deposition,

Plaintiff merely asserted that "[n]o one in a specialized unit would take someone with a failure to

supervise on their record;" when asked what his basis was for concluding as much, Plaintiff

merely replied that "[i]t's a word of mouth around the department that it's frowned upon and a

disqualifier."  Dkt. No. 59, Ex. B at 48:6-13.  Plaintiff relies exclusively on conclusory assertions

to substantiate his argument, despite lacking personal knowledge; these efforts do not raise any

genuine issue of material fact on this point.  *See Fletcher v. ABM Bldg. Value*, 775 F. App'x 8,

14 (2d Cir. 2019) (finding that a transfer and "disciplinary write ups were not adverse

employment actions because they were only notices and did not result in disciplinary action.");

*Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 205 F. App'x 858, 861 (2d Cir. 2006) (affirming

the district court's grant of summary judgment to the employer and explaining that plaintiff's

reliance on "conclusory assertions" that "lack[ed] evidentiary support . . . [did] not satisfy

[plaintiff's] burden of production in response to a motion for summary judgment."); *Miller

Marine Services v. Travelers Property Casualty Insurance Co.*, 197 F. App'x 62, 64 & n.1 (2d

Cir. 2006); *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001), *abrogated

on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (finding

"notice of discipline" and "counseling memo" did not constitute a materially adverse action

when the plaintiff did "not describe its effect or ramifications [or] how or why the effect would

be serious."); *Smith v. City of N.Y.*, 385 F. Supp. 3d 323, 335 (S.D.N.Y. 2019) (ruling that a

command discipline did not constitute an adverse employment action because Plaintiff provided

"no evidence that his [command disciplines] carried any tangible negative consequences.").

---

[3] To the extent that Plaintiff argues that the issuance of the "B" command discipline in itself constitutes a materially adverse action, his claim is premature because no discipline has been effected yet.

But Plaintiff satisfies the third prong's requirement of an adverse employment action with respect to at least some of his claims.  Notably, he argues that "denied vacation days, overtime opportunities, and overtime pay" constitute materially adverse employment actions.  Pl. Opp. Br. at 7-8.  With respect to the overtime opportunities, Defendant counters that Plaintiff's allegation is "flatly contradicted by the record," insofar as "Plaintiff testified that he worked overtime during that period (though not his preferred assignments) and Plaintiff's payment records reflect that Plaintiff consistently received overtime assignments during that period."  Def. Br. at 8.  And Plaintiff concedes that during the period in question he was appointed to 24 overtime assignments and compensated in cash for those assignments.  Pl.'s 56.1 Resp. ¶ 95.  Thus, Plaintiff's claim of material adversity hinges on his claim that his overtime *requests* were denied.  Pl.'s 56.1 Resp. ¶ 95.  Even setting aside the dearth of record evidence substantiating Plaintiff's claims, the denial of *particular* overtime opportunities does not rise to the level of a materially adverse employment action.

On the other hand, the loss of vacation days alone does constitute a "material loss of benefits," which in itself can satisfy the third prong's requirement.  *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quoting *Crady v. Liberty Nat. Bank & Tr. Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).  In other contexts, courts in the Second Circuit have held that "denial of vacation time" or "loss of vacation days" do not constitute adverse employment actions.  *See Drouillard v. Sprint/United Mgmt. Co.*, 375 F. Supp. 3d 245, 272 (E.D.N.Y. 2019) (quoting *Chukwuka v. City of New York*, 795 F. Supp. 2d 256, 261 (S.D.N.Y. 2011)).  But there is no categorical rule indicating that this must *always* be the case.  Title VII inquiries are context-specific.  Regardless of the ultimate merits of Plaintiff's claim, however, at this juncture the inquiry is simpler: Whether a jury could reasonably conclude that the loss of vacation days,

stemming from the various command disciplines, satisfies the third prong. Because Plaintiff is able to rely on evidence that he lost vacation days as a result of the command disciplines, the Court resolves this question in Plaintiff's favor.

### b. Inference of Discrimination

Defendant next argues that Plaintiff cannot establish a *prima facie* case of discrimination because he is unable to satisfy the fourth prong of the test. *See* Def. Br. at 8–14. To support an argument that circumstances give rise to an inference of discrimination, a plaintiff may point to "invidious comments about others in the employee's protected group[]" or to "the more favorable treatment of employees not in the protected group." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (internal quotation marks omitted); *see also* Pl. Opp. Br. at 9–10. Plaintiff has not meaningfully raised any arguments regarding invidious comments about African Americans; instead, he relies exclusively on the argument that he was disadvantaged as compared to non-African American officers.

Disparate treatment can typically only give rise to an inference of discrimination when a plaintiff shows "that he was similarly situated in all material respects to the individuals with whom he seeks to compare himself." *Ferraro v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 1117, 2017 U.S. Dist. LEXIS 161799, at *39–40 (E.D.N.Y. Sept. 30, 2017) (internal citations omitted). "A plaintiff is not obligated to show disparate treatment of an *identically* situated employee." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) (emphasis in original). Rather, "it is sufficient that the employee to whom plaintiff points be similarly situated in all material respects." *Id.* To determine whether an employee is similarly situated to co-employees, courts look to whether "[the employees] were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Ruiz v. Cty. of Rockland*, 609

F.3d 486, 493-94 (2d Cir. 2009) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).  By necessity, the inquiry is context-specific.  At the very least, however, a plaintiff must show that he and his comparators were "subject to the same workplace standards" in such a way as to "allow[] for a 'reasonably close resemblance of facts and circumstances.'" *Smith v. City of N.Y.*, 385 F. Supp. 3d 323, 338–39 (S.D.N.Y. 2019) (quoting *Baity v. Kralik*, 51 F. Supp. 3d 414, 445 (S.D.N.Y. 2014)).

Even drawing all reasonable inferences in his favor, Plaintiff has not shown any genuine issue of material fact as to whether his purported comparators were similarly situated in all material respects.  This is true even assuming *arguendo* that all of Plaintiff's allegations rise to the level of materially adverse employment actions, though, as noted above, many do not.  In his opposition to Defendant's motion for summary judgment, Plaintiff lists thirteen instances or examples that Plaintiff describes as "demonstrating an inference of racial discrimination."  Pl. Opp. Br. at 9–11.  Nonetheless, none of these provide any basis to defeat summary judgment. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  Throughout, even after drawing all reasonable inferences in Plaintiff's favor, he has not identified evidence sufficient to establish that these officers were similarly situated.

As an initial matter, this Court already ruled that "any claims that are premised on acts prior to August 10, 2016 are time-barred."  MTD Op. at 5.  Some of the examples Plaintiff references in support of his inference of discrimination argument predate August 10, 2016.  But

as Plaintiff cannot rely on those, and as this Court already ruled on this question, the Court will not re-adjudicate the matter; even if the Court had reached the merits on these, however, each of them would fail for the same reasons as the non-time-barred examples.  In any event, the following claims are time-barred and beyond the scope of what Plaintiff may present:[4] (1) "[U]sing a written log system to record officer infractions where the [Integrity Control Officer] locked up the log and infractions written in the log by African American sergeants against Hispanic officers would be crossed out."  Pl. Opp. Br. at 9 (citing SAC ¶ 16); *see also* MTD Op. at 5 (noting that this claim is time-barred).  (2) "Captain Ghonz, a Hispanic officer, issuing a command discipline to Plaintiff in April 2016 for incorrectly assigning officers during his shift, despite Sgt. Tirado telling him that Plaintiff was unaware of those assignments."  *Id.* at 10 (citing SAC ¶ 23); *see also* MTD Op. at 5 (noting that this claim is time-barred).  (3) "Captain Ghonz issuing a command discipline to Plaintiff in May 2016 for failing to respond to an incident in Manhattan when he was patrolling in the Bronx and there was no other supervisor on patrol that night."  *Id.* at 10 (citing SAC ¶ 24); *see also* MTD Op. at 5 (noting that this claim is time-barred).  (4) Plaintiff alleges that he was issued "a command discipline . . . on January 5, 2015 for failing to report a grand larceny. . . ."  *Id.* at 9–10 (citing SAC ¶ 18); *see also* MTD Op. at 5.

---

[4] A fifth claim is likely time-barred, but the parties did not allege facts with sufficient specificity to allow the Court to make such a determination.  Plaintiff alleges that Defendant "refus[ed] to award Plaintiff an earned preferential supervisory position at the conclusion of Operation IMPACT, instead granting these roles to seven Hispanic sergeants."  Pl.'s Opp. Br., at 10 (citing SAC ¶ 22).  The Second Amended Complaint, meanwhile, notes that Operation IMPACT ended in March 2016.  SAC ¶¶ 21–22.  Regardless of whether this allegation is time-barred, Plaintiff does not cite any record evidence that would allow the Court to rule in his favor.  His response to Defendant's 56.1 statement cites only to the unverified complaint, which is not enough at summary judgment.  *See* Pl.'s 56.1 Resp. ¶¶ 77–84; *see also Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, No. 07-CV-3635, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. Jun. 4, 2009) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)) ("On a motion for summary judgment, however, "allegations in an unverified complaint cannot be considered as evidence.").  Furthermore, Plaintiff's claim again fails because he does not provide sufficient information for the Court to conclude that the purported comparators are similarly situated.

None of the rest suffice to create a genuine issue of material fact or to otherwise defeat summary judgment.  With respect to some, Plaintiff fails to allege the existence of *any* comparators.  Plaintiff, citing assertions made in the Second Amended Complaint, attempts to rely on the following examples to satisfy the fourth prong: (1) "Lt. Ravelo, a Hispanic officer, reprimanding Plaintiff for ensuring the safety of fellow officers," Pl. Opp. Br. at 10 (citing SAC ¶ 20); (2) "Lt. Espinosa, a Hispanic officer, refusing to process or grant overtime hours to Plaintiff," *id.* at 10 (citing SAC ¶ 30); (3) Defendant "dock[ed] Plaintiff vacation days based upon false allegations," *id.* at 10 (citing SAC ¶¶ 30, 33, 38); (4) Defendant "assign[ed] Plaintiff to day tours, as of December 22, 2016, constituting a demotion given Plaintiff's overall tenure and supervisory experience," *id.* at 10 (citing SAC ¶ 37); (5) Defendant "instruct[ed] Plaintiff not to pursue disciplining a Hispanic officer under his supervision for direct insubordination," *id.* at 10 (citing SAC ¶ 39).  In none of these, including the allegation that relates to his loss of vacation days, does Plaintiff proffer evidence of "invidious comments," *Littlejohn*, 795 F.3d at 312, or of any other evidence that would allow a reasonable jury to infer discrimination.  That, combined with the fact that Plaintiff identifies no comparators, makes clear that, even after having all reasonable inferences drawn in his favor, Plaintiff has not made a showing sufficient to establish the fourth element of a *prima facie* case of discrimination as to these claims.

Plaintiff *does* allege the existence of comparators with respect to the remaining incidents and examples that he lists in his opposition.  Nonetheless, he has not established a genuine issue of material fact regarding whether the purported comparators were "similarly situated" in all material respects, *see Ruiz*, 609 F.3d at 493–94, and he has failed to support his claims to that effect by reference to evidence in the record.

Plaintiff alleges, for instance, that Defendant "issu[ed] a command discipline to Plaintiff on July 20, 2016 and dock[ed] eight vacation days from Plaintiff for failure to supervise and for incorrectly establishing a crime scene, when Caucasian officer Lt. Gabriel Healy received a slap on the wrist and was subsequently granted a transfer to a preferred position." Pl. Opp. Br. at 10 (citing SAC ¶¶ 25–29). The command discipline that resulted from the July 20, 2016 incidents was issued on February 15, 2017, so this claim is not time-barred. Pl.'s 56.1 Resp. ¶ 29. Yet it still fails. To begin with, Plaintiff has identified the race of only one other individual who was present during that shift; with respect to the rest, Plaintiff is silent. *See Moore v. N.Y.S. Div. of Parole,* No. 06-CV-1973 (CPS) (JO), 2008 WL 4394677, at *13 (E.D.N.Y. Sept. 23, 2008) (holding that the plaintiff did not establish a *prima facie* case for race discrimination because she failed to identify the race of her alleged comparators, and thus failed identify which employees were outside of her protected group). The only officer whose race Plaintiff identifies— Lieutenant Healy, who according to Plaintiff is Caucasian—also received a command discipline in connection to this incident. Pl.'s 56.1 Resp. ¶ 30. Plaintiff acknowledges that "he doesn't know the exact substance of Lt. Healy's command discipline," but he nonetheless posits, without any evidentiary support, that it was only a "slap on the wrist" because "upon information and belief, Lt. Healy was subsequently granted a transfer to a preferred position." Pl.'s 56.1 Resp. ¶¶ 24, 31. But "conclusory allegations 'upon information and belief' . . . cannot defeat summary judgment." *Little v. Massari*, 526 F. Supp. 2d 371, 376-77 (E.D.N.Y. 2007). Thus, because he has not raised any genuine issue of material fact on this point, and because there is a "lack of evidence in support of the plaintiff's position," *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998), his argument is insufficient to defeat summary judgment.

Plaintiff also argues that Defendant "reprimand[ed] Plaintiff for accepting money from subordinate officers . . . while other Hispanic officers solicited collections" and were not subject to "any disciplinary action."  Pl. Opp. Br. at 10 (citing SAC ¶¶ 34–35) (cleaned up).  Indeed, one of Plaintiff's central allegations in this litigation is that he was disciplined for soliciting money from subordinates and that other officers—namely, Sgt. A. Fernandez, Lt. Espinosa, and Inspector Rivera—who allegedly also solicited money from subordinates went undisciplined. Pl.'s 56.1 Resp. ¶ 14; Dkt. No. 59, Ex. B at 61:4-21.  But Plaintiff's argument those officers were similarly situated fails for at least three reasons.  First, Plaintiff offers no evidence that the three officers did, in fact, engage in the prohibited conduct.  In contrast, Plaintiff admitted to soliciting money from his subordinates.  Pl.'s 56.1 Resp.  ¶¶ 3–11.  *See also Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (finding that to satisfy the fourth prong, a plaintiff must "show that similarly situated employees who went undisciplined engaged in comparable conduct." (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).  Second, Plaintiff offers no evidence that their conduct was reported to IAB, by anonymous letter or by any other means.  In contrast, IAB's investigation of Plaintiff's conduct was prompted by the anonymous letter, thereby undermining any inference that IAB arbitrarily chose to investigate Plaintiff but not the other officers. *See Ruiz v. Cty. of Rockland*, 609 F.3d 486, 495 (2d Cir. 2010) (noting that the "fact that [plaintiff] had been accused . . . of inappropriate and unlawful behavior clearly distinguishes Mr. Ruiz from other employees who were not the subject of such accusations.").  Third, Plaintiff offers no evidence that the three officers were *not* investigated and disciplined. *See* Pl.'s 56.1 Resp.  ¶¶ 14–18.  Thus, even "after adequate time for discovery," Plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [his] case"—namely, that the purported comparators were similarly situated in all material respects.

*Celotex*, 477 U.S. at 323.  At this stage in the litigation, that is not enough to defeat summary judgment.

Finally, Plaintiff claims that Defendant "delay[ed] Plaintiff's performance review . . . and issu[ed] a negative evaluation based upon performance issues and command disciplines which Hispanic officers acting in the same role and duties did not experience."  Pl. Opp. Br. at 10–11 (citing SAC ¶¶ 41, 45).  Here, too, Plaintiff fails to identify any comparators or articulate personal knowledge, instead relying on a conclusory allegation the "Hispanic officers" did not experience negative evaluations and command disciplines.  But even if the Court were willing to assume that Hispanic officers "acting in the same role and duties" were not subject to comparable negative evaluations and command disciplines, Plaintiff has not presented any evidence to support his position that those officers were similarly situated to him.  *See Danzer*, 151 F.3d at 54.  Here, again, Plaintiff's reliance on speculation and conjecture does not raise a genuine issue of material fact, *see Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), and Plaintiff's showing is insufficient to establish this element even after the Court has drawn all reasonable inferences in his favor.

In sum, it is well established that to satisfy the fourth prong of the test, a plaintiff must do more than "cite to their mistreatment and ask the court to conclude that it must have been related to their race."  *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001).  Plaintiff has not done so here.  Plaintiff has not raised any genuine issue of material fact that would enable him to defeat summary judgment, nor has he made a showing sufficient to establish the existence of all of the elements essential to a *prima facie* case of discrimination, even after all reasonable inferences have been drawn in his favor.  Accordingly, Defendant is entitled to summary judgment in its favor as a matter of law.

2. **Plaintiff's Arguments Regarding Pretext**

Even assuming for the sake of argument that Plaintiff had made out a *prima facie* case of

discrimination, the Court would still grant Defendant's motion.  The second step in the

*McDonnell Douglas* analysis inquires whether the defendant has put forward "a legitimate,

nondiscriminatory reason" for the challenged actions. *Texas Dep't of Cmty. Affairs v. Burdine*,

450 U.S. 248, 253–54 (1981).  To clear this step, the defendant "need not persuade the court that

it was actually motivated by the proffered reasons" but must nonetheless "raise[] a genuine issue

of fact as to whether it discriminated against the plaintiff."  *Id.*  Defendant has met its burden at

this stage by advancing legitimate, non-discriminatory reasons for his termination: Namely, that

Plaintiff was issued command disciplines in line with departmental policy; that Plaintiff engaged

in the conduct described in his command disciplines, and that Plaintiff violated the NYPD's

Patrol Guide and failed to properly execute his job duties and otherwise abide by precinct and

NYPD policy.  Def. Br. at 14–15.  Plaintiff does not meaningfully dispute this point, and instead

argues only that the "alleged legitimate, non-discriminatory reasons . . . are merely pretextual,"

which goes to the third step in the *McDonnell Douglas* analysis.  Pl. Opp. Br. at 11.

The third step in the *McDonnell Douglas* analysis commands that the burden shifts back

to Plaintiff to put forward sufficient evidence to permit a reasonable jury to conclude by a

preponderance of the evidence that those legitimate, nondiscriminatory reasons were merely

pretext for discrimination.  That is, the third step requires the Court to determine whether the

plaintiff has created a genuine issue of fact with respect to whether "the employer's [proffered]

reason 'was in fact pretext' for discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801

F.3d 72, 83 (2d Cir. 2015) (quoting *McDonnell Douglas*, 411 U.S. at 804).  In making this

determination, "the trier of fact may still consider the evidence establishing the plaintiff's prima

facie case 'and inferences properly drawn therefrom.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 255 n.10).  If the plaintiff "has presented evidence sufficient to support an inference . . .  that the reasons given by the defendant for its employment decision were not its real reasons, triable issues of fact are presented."  *Stern v. Trustees of Columbia University*, 131 F.3d 305, 313 (2d Cir. 1997).

Plaintiff's argument at this step reiterates his belief that Defendant "had a practice of not enforcing the departmental policy against similarly situated . . . non-African American employees."  Pl. Opp. Br. at 11.  And, in line with this, Plaintiff posits that Defendant applied its policies "inconsistent[ly]."  *Id.* at 12.  But for many of the same reasons Plaintiff is unable to establish an inference of discrimination in making his *prima facie* case, Plaintiff is unable to carry his burden here.  He provides no admissible evidence to substantiate his claim that the legitimate, non-discriminatory reasons provided were pretext for discrimination, and he raises no genuine issue of material fact on this point.  As already noted, some of Plaintiff's allegations are plainly time-barred.  With respect to others, he fails to proffer any evidence of invidious discrimination and offers no comparators.  And finally, in those where he names purported comparators, he fails to identify any evidence—admissible or otherwise—that the officers in question were similarly situated, or even to make sufficiently specific allegations to that effect. "Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."  *Holcomb*, 521 F.3d at 137; *see also Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 66 (S.D.N.Y. 2016).  Instead, throughout, Plaintiff relies primarily on allegations he made in the second amended complaint to support his discrimination arguments—unsubstantiated allegations that "cannot be considered as evidence" at the summary judgment stage.  *Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, No. 07-CV-3635,

2009 WL 1564144, at *1 n.1 (S.D.N.Y. Jun. 4, 2009) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).  Even after drawing all reasonable inferences in Plaintiff's favor, Defendant would still be entitled to summary judgment in its favor.

### B.  Plaintiff's Remaining NYSHRL and NYCHRL Claims

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims under the NYSHRL and NYCHRL.  *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (*per curiam*) (noting that "when the federal claims are dismissed the 'state claims should be dismissed as well.'" (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994)); *see also Johnson v. Morrison & Foerster LLP*, No. 14-CV-428 (JMF), 2015 WL 845723, at *7 (S.D.N.Y. Feb. 26, 2015) (declining to exercise supplemental jurisdiction over the plaintiff's NYCHRL and NYSHRL claims after dismissing the federal claims).

### V.    Conclusion

For the reasons articulated above, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's Title VII claims, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims under the NYSHRL and NYCHRL. The Clerk of Court is respectfully directed to terminate Dkt. No. 57, enter judgment, and to close this case.

SO ORDERED.

Dated: October 19, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge